[No. 8994. Department One. November 11, 1910.]

CLAUDE LEITCH, *Respondent*, v. J. W. YOUNG, *Appellant.* CLAUDE LEITCH, *Respondent*, v. E. E. BACON, *Appellant.*[1]

EQUITY — ADVISORY VERDICT — CONCLUSIVENESS — INCONSISTENCY. Upon the submission of questions to a jury in an equitable case, the verdict is advisory only, and inconsistency between special findings and the general verdict is immaterial.

TRIAL—FINDINGS—NECESSITY. Specific findings are not necessary in an equity case.

APPEAL—REVIEW—FINDINGS. Findings will not be disturbed on appeal where the trial judge heard and saw the witnesses and the evidence is conflicting and fully supports the findings.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered April 2, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in consolidated actions to foreclose pledges of shares of corporate stock. Affirmed.

*Boner & Boner*, for appellants.

*John C. Hogan*, for respondent.

PARKER, J.—These suits were commenced to foreclose certain pledges of shares of the capital stock of the Leitch-

[1] Reported in 111 Pac. 449.

Walker Shingle Company, a corporation, which were pledged by defendants to the plaintiff and his associates to secure the payment of certain promissory notes. There is no controversy over the execution of the notes and pledges, and the defense in each case being based upon the same facts, the cases were consolidated by stipulation of all parties and tried together. By request of the defendants the trial was before the court and a jury, though it is conceded that the issues are of equitable cognizance. The result was a verdict and judgment in favor of the plaintiff, and the defendants have appealed.

On and prior to September 4, 1908, the Leitch-Walker Shingle Company was the owner of a shingle mill plant and stock on hand, near Tenino, in Thurston county, and a contract for the delivery to its mill of all the merchantable shingle bolts upon certain lands in that neighborhood. Its capital stock was 80 shares of the par value of $100 per share. The respondent and his associates were the owners of 60 shares of this stock. On September 4, 1908, they sold their stock to appellants, 40 shares to Young and 20 shares to Bacon, who paid for the same one-half cash, and one-half by executing separately their promissory notes payable September 4, 1909, and secured the same by each pledging certain shares of the same stock. The respondent became sole owner of the notes by assignment, and these suits were commenced to foreclose the pledges soon after the notes became due.

The affirmative defenses present the only questions here involved, which are, in substance, that respondent and his associates made certain false representations as to the resources and liabilities of the company, inducing appellants to purchase the stock, to the effect that the company was worth several thousand dollars more than it in fact was worth, and that the excess of such represented worth over its true worth far exceeded the amount due upon the notes here involved. The respondent not being an innocent holder, there is presented simply the question of offsetting against the purchase

price of the stock the difference between its value measured by the true condition of the company and its value measured by the condition of the company as represented. At the time of the sale of the stock, respondent and his associates gave to appellants a statement of the resources and liabilities of the company, with a written guaranty that it was "practically correct." The only question upon this guaranty arises upon appellants' allegations of its incorrectness. It is also alleged that respondent and his associates represented that there would be 10,500 cords of bolts coming to the company under the contract, which would be sufficient to run the mill three years, when, in fact, there was upon the land covered by the contract only about one-half that amount.

The jury returned general verdicts for respondent for the amount due upon the notes less the sum of $170, which it evidently deducted on account of incorrectness in the guaranteed statement of the company's resources and liabilities. The court adopted the findings of the jury as evidenced by its general verdicts, and rendered judgments accordingly. Certain interrogatories were submitted to, and answered by, the jury in the form of a special verdict. It is argued that these answers are inconsistent with the general verdicts; that neither are warranted by the evidence; that the evidence showed misrepresentations touching the worth of the company affecting the value of the stock more than the amounts due upon the notes; and that, therefore, the judgments should have been for appellants notwithstanding the verdicts. This is, in substance, the whole of appellants' contentions, and, of course, only involves questions of fact. This being on the equity side of the court, and the findings of the jury being merely advisory to the court, we will not concern ourselves with errors arising out of possible inconsistencies between the special and general verdicts. The submission of the issues of fact to the jury was wholly optional with the court. It could adopt the jury's findings or any of them, or could reject any or all of them. *Rathjens v. Merrill*, 38 Wash. 442, 80

Pac. 754; *Wintermute v. Carner*, 8 Wash. 585, 36 Pac. 490,
Nor was it necessary to make any specific findings in a cause
of this nature. *White Crest Canning Co. v. Sims*, 30 Wash.
374, 70 Pac. 1003; *Clambey v. Copland*, 52 Wash. 580, 100
Pac. 1031. So the question before use is the same as if the
court had disposed of the cases upon its own conclusions upon
the facts without making any specific findings other than as
to the amounts due.

We have carefully read all of the several hundred pages
of evidence bearing upon the alleged representations as to
the company's resources and liabilities. It would not be prac-
tical, or serve any useful purpose, to review the evidence here
touching the numerous items involved. We find a sharp
conflict in the evidence concerning the amount of shingle-
bolts upon the land, and also concerning the alleged repre-
sentation made relative thereto. The evidence relating to
most of the other items involved is either uncertain or in con-
flict, and even the amount allowed appellants seems to have
been made up of items at least some of which were allowed
upon evidence not free from conflict. The learned trial court
heard and saw all the witnesses. His opportunity for determ-
ining the facts was better than ours, and we think this record
fully supports his conclusions.

The judgments are affirmed.

Rudkin, C. J., Mount, Fullerton, and Gose, JJ., con-
cur.